UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

                Plaintiff,

v.

FLINT COMMUNITY SCHOOLS and
LARRY WATKINS, JR., in his official
capacity as Interim Superintendent of
Flint Community Schools,

                Defendants.

File No. _____

Hon. _____

_____

MICHIGAN PROTECTION AND ADVOCACY
SERVICE, INC.
Brad Dembs (P76692)
Crystal Grant (P71488)
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755

_____

## COMPLAINT

## I. INTRODUCTION

1.    Plaintiff is the designated protection and advocacy system for individuals with disabilities in the state of Michigan pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI

Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001 *et seq.*; and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e *et seq.* (hereafter collectively referred to as the "P&A Acts").

2.     Over approximately the past year, Plaintiff has been contacted by numerous families of children with disabilities who are enrolled as students at Defendants' schools. These callers have raised concerns that their children are not being provided with the rights, benefits, or protections afforded by federal and state law, including the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq.*, and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12132 *et seq.* In an effort to provide these families with legal advice, assistance, and other protection and advocacy services, Plaintiff has attempted to obtain their children's education records from Defendants. Despite the fact that Plaintiff has submitted multiple requests on behalf of these families, Defendants have either summarily ignored Plaintiff's requests or delayed in providing records for extended periods of time, often exceeding several months.

2

Even when records were provide after lengthy delays, they were minimal and incomplete.

3.     Defendants' failure to provide Plaintiff with the requested educational records has interfered with Plaintiff's responsibilities under federal and state law to protect and advocate for persons with disabilities. By preventing Plaintiff from accessing information that is necessary to provide effective advocacy and support to its clients, Defendants have prevented students with disabilities and their families from obtaining the information and advice needed to ensure that the students receive the education, related services, and procedural protections afforded by federal law.

4.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to enforce its authority under the P&A Acts to inspect and copy information and records of students with disabilities whose parents or guardians have requested Plaintiff's assistance.

## II. JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

6.     Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

3

7.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), as all of the events and omissions complained of herein occurred in this district.

### III. PARTIES

8.      Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS), is a Michigan non-profit corporation designated by the Governor of Michigan as the state's protection and advocacy system, pursuant to MCL 330.1931, with the responsibility to enforce and carry out the federal mandates under the P&A Acts. Plaintiff fulfills this responsibility by providing highly trained and experienced attorneys and advocates to assist people with disabilities in advocating for their rights under the law.

9.      Under the P&A Acts, Plaintiff has broad access rights for the purpose of providing protection and advocacy services to people with disabilities who have requested Plaintiff's assistance, including access to all records of any individual who is a client of the system with authorization from that client or legal guardian. Plaintiff also has the right to inspect and copy such information and records, subject to a reasonable charge. 42 U.S.C. §§ 10805(a)(4)(A), 15043(a)(2)(I)(i); 42 C.F.R. § 51.41 (PAIMI regulations); 45 C.F.R. § 1386.22 (DD regulations).

4

10.    Defendant Flint Community Schools (hereinafter "the District") is a general powers school district, as defined by the Michigan Revised School Code, MCL 380.11a, operating and conducting business in the city of Flint within the state of Michigan. The District is required to provide children with disabilities with a range of education and related services and treatments in order for them to be afforded a free appropriate public education. As such, the public schools are facilities providing care and treatment to persons with disabilities within the meaning of the P&A Acts.

11.    Defendant, Larry Watkins, Jr., is the Interim Superintendent of Flint Community Schools. He is the chief administrative head of the District, and has general supervision of all public schools and personnel of the District. He is responsible for the management of the schools in accordance with the policies of the District, as determined and approved by the Board of Education, and for the administration, control, and operation of the functions, programs, and affairs of the District. He is being sued in his official capacity only.

## IV. FACTS

12.    Michigan Protection and Advocacy Service, Inc. ("MPAS" or "Plaintiff") was established pursuant to the P&A Acts to protect and advocate for the rights of people with disabilities. To carry out this mandate,

MPAS provides a wide range of services to people with disabilities, their relatives, and advocates, including information and referral, training and public education outreach, and legal advice and representation by highly trained and experienced staff attorneys.

13.    Since the enactment by Congress in 1975 of the Education for All Handicapped Children Act (now known as the Individuals with Disabilities Education Act or "IDEA," 20 U.S.C. §§ 1401 *et seq.*), every state has chosen to participate in this federal-state cooperative effort to bring special education services to students with disabilities by accepting federal funds conditioned upon their commitment to doing so.

14.    The IDEA consists of a complex body of law that includes the federal statute and detailed implementing regulations. Additionally, Michigan has adopted its own statute and regulations to comply with the federal scheme and, in certain respects, to extend it in a manner consistent with Congressional purposes.

15.    Approximately 13% of the student population in the United States received special education under Part B of the IDEA during the 2012-13 school year.[1] In Michigan, during the 2014-15 school year, approximately 13% of the student population received special education

---

[1] 2012-13 is the most recent year for which national statistics are currently available. *See* National Center for Education Statistics, *available at* https://nces.ed.gov/programs/digest/d14/tables/dt14_204.30.asp

services.[2] Most of these students are eligible for the services provided by MPAS under at least one of the P&A Acts.

16.    Not surprisingly, therefore, MPAS receives approximately 1,500 to 2,000 calls per year from parents who are concerned about their children's educational rights.

17.    MPAS does not have the resources to fully meet the high demand for legal representation in special education matters involving Michigan residents with disabilities. Prompt access to the records of students is critical to MPAS' ability to effectively and efficiently handle special education cases by providing sound legal analysis, advice and representation to as many families as possible.

18.    In order to effectively advise families on their rights and the rights of their children with disabilities, it is essential to have complete and accurate information on the child's performance in school and the steps that the school district has taken, or failed to take, towards meeting its legal obligations. While parents are often unable to accurately convey those facts on their own, such information is formally captured in school records.

---

[2] Michigan School Data, 2014-15 Special Education Data Portraits: Disability Snapshot / Statewide / All Disability Types, *available at*
www.mischooldata.org/SpecialEducationEarlyOn/DataPortraits/DataPortraitsDisability.aspx

A review of those records is essential to providing clear and appropriate legal advice.

19.    As described below, Plaintiff has sent Defendants numerous records requests for various children with disabilities, which Defendants have repeatedly ignored or otherwise not responded to. Plaintiff also sent Defendants a letter requesting the opportunity to work cooperatively to solve this issue. True to form, Defendants did not acknowledge this letter in any way.

20.    In several cases, in order to obtain records, Plaintiff has been required to file due process complaints against Defendants, pursuant to 20 U.S.C. § 1415. Each of these complaints has resulted in Defendants providing records sought by Plaintiff, although in some cases, complete records were still not provided.

21.    Notwithstanding these numerous complaints and settlements, Defendants continue to refuse to provide Plaintiff with educational records within a reasonable time following a request and, in several cases, fail to provide such records altogether.

22.    Defendants' inaction in response to requests for education records creates an insurmountable barrier to parents' ability to advocate on behalf of their own children. Parents begin this process at a disadvantage

8

when dealing with school districts as they lack general knowledge of the education system and are often unaware of what they and their children are entitled to under the law. Defendants' refusal to provide records discourages and excludes parents from actively participating in their children's education, a result that the Michigan Revised School Code[3] and the procedural safeguards of the IDEA were written to protect against.

23.   Defendants' denial or delay in providing records is a longstanding and ongoing practice that continues to frustrate Plaintiff's purpose to protect and advocate on behalf of its clients. This inaction on the part of Defendants forces Plaintiff to use its limited resources to pursue legal remedies in order to obtain records that should rightfully have been provided upon request under the P&A Acts. As a result of this diversion of time and resources, the number of students with disabilities that Plaintiff can serve is decreased and the provision of protection and advocacy services to those for whom records have been requested is unnecessarily delayed, to the detriment of all students with disabilities in Michigan.

---

[3] *See* MCL 380.10, "It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment."

## A.   Unresolved Records Requests

### i.   R.W.

24.   On approximately March 6, 2015, Sierra McLeod contacted MPAS for assistance with educational programming for her daughter, R.W., a child with a disability covered by the DD Act who is enrolled in the District. She reported that the District was refusing to evaluate R.W. for special education eligibility despite multiple requests and that they had proposed a plan to hold her back for the second year in a row for failure to make educational progress.

25.   On March 19, 2015, Ms. McLeod signed a retainer agreement, authorizing MPAS to represent her and R.W. in investigating the educational issues she had raised and to access R.W.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

26.   On March 27, 2015, MPAS, acting as the parent's representative, sent a letter to Defendants requesting a copy of the student's education records. The documents requested included evaluations and assessments, attendance records, progress reports, and records of services provided, among other things. A copy of the signed release of information was enclosed with this request.

27.    The March 27, 2015 letter also included the following paragraph to ensure that Defendants were aware of Plaintiff's access authority under the P&A Acts:

> Please note that MPAS is the federally mandated, state designated Protection and Advocacy system for the state of Michigan. As such, MPAS has its own unique standing for requesting records that entitles MPAS to receive copies of the records of an individual with a disability, with appropriate written consent, within three days. See 45 C.F.R. § 1386.22(d) and 42 U.S.C. 15043(a)(2)(I),(J). We have allowed a longer time frame for response as a courtesy, but cannot meet our obligations under federal mandate if you do not respond to our requests promptly.

28.    As of the date of this filing, Defendants have failed and refused to provide Plaintiff with the requested records as required by the P&A Acts.

29.    R.W. is at risk of being held back in the 1st grade for the second time and Defendants have summarily ignored her mother's requests for evaluations to determine whether she needs special education services. In order to provide meaningful advocacy and support to R.W., Plaintiff must review her records to find out whether Defendants have conducted any evaluations, what her current level of achievement is, and whether she has made any educational progress during the school year. Defendants' denial of access to the student's educational records leaves R.W. without an informed advocate to protect her rights.

ii.    J.J.

30.    On approximately March 25, 2015, Marisa Sand contacted MPAS for assistance with educational programming for her son, J.J., a child with a disability covered by the DD and PAIMI Acts who is enrolled in the District. She reported that the District was not providing J.J. with appropriate behavioral support services and that she had been effectively excluded from participating in the development of his education plan. As a result, J.J. was being frequently removed from school due to disability-related behavior issues; however the District was not accurately documenting these removals as suspensions.

31.    On March 30, 2015, Ms. Sand signed a retainer agreement, authorizing MPAS to represent her and J.J. in investigating the educational issues she had raised and to access J.J.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

32.    On March 31, 2015, MPAS, acting as the parent's representative, sent a letter to Defendants requesting a copy of the student's education records. The documents requested included evaluations and assessments, attendance records, individualized education plans, progress reports, records of services provided, behavior plans,

12

records of discipline referrals, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

33.    The March 31, 2015 letter also included the following paragraph to ensure that Defendants were aware of Plaintiff's access authority under the P&A Acts:

> Please note that MPAS is the federally mandated, state designated Protection and Advocacy system for the state of Michigan. As such, MPAS has its own unique standing for requesting records that entitles MPAS to receive copies of the records of an individual with a disability, with appropriate written consent, within three days. *See* 45 C.F.R. § 1386.22(d) and 42 U.S.C. 15043(a)(2)(I),(J). We have allowed a longer time frame for response as a courtesy, but cannot meet our obligations under federal mandate if you do not respond to our requests promptly.

34.    As of the date of this filing, Defendants have failed and refused to provide Plaintiff with the requested records as required by the P&A Acts.

35.    J.J. has missed a significant amount of instructional time as a result of being removed from school by Defendants without being provided appropriate behavior interventions and supports to meet his needs. Without access to current service plans, attendance logs, and discipline records, Plaintiff cannot effectively advocate for more appropriate services and as a result, J.J. could miss additional class time and fall further behind his peers academically. By refusing to provide the requested records, Defendants

continue to frustrate Plaintiff's purpose as a P&A system by impeding Plaintiff's ability to provide meaningful advocacy and support to its client.

### iii.   A.G.

36.   On approximately March 6, 2015, Sierra McLeod contacted MPAS for assistance with educational programming for her daughter, A.G., a child with a disability covered by the DD Act who is enrolled in the District. She reported that A.G. was diagnosed with a learning disability but was not receiving sufficient special education services. Ms. McLeod was told by the District that they planned to hold A.G. back for the second year in a row due to her failure to make educational progress. Additionally, A.G. gets frustrated when she struggles academically and has behavioral outbursts that have led to multiple suspensions.

37.   On approximately March 19, 2015, Ms. McLeod signed a retainer agreement, authorizing MPAS to represent her and A.G. in investigating the educational issues she had raised and to access A.G.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

38.   On April 21, 2015, MPAS, acting as the parent's representative, sent a letter to Defendants requesting a copy of the student's education

records. The documents requested included evaluations and assessments, attendance records, individualized education plans, progress reports, records of services provided, personal curriculum plans, behavior plans, records of discipline referrals, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

39. The April 21, 2015 letter also included the following paragraph to ensure that Defendants were aware of Plaintiff's access authority under the P&A Acts:

> Please note that MPAS is the federally mandated, state designated Protection and Advocacy system for the state of Michigan. As such, MPAS has its own unique standing for requesting records that entitles MPAS to receive copies of the records of an individual with a disability, with appropriate written consent, within three days. See 45 C.F.R. § 1386.22(d) and 42 U.S.C. 15043(a)(2)(I),(J). We have allowed a longer time frame for response as a courtesy, but cannot meet our obligations under federal mandate if you do not respond to our requests promptly.

40. As of the date of this filing, Defendants have failed and refused to provide Plaintiff with the requested records as required by the P&A Acts.

41. A.G. is at risk of being barred from advancing to the next grade in school as a result of Defendants' failure to provide appropriate special education supports and services, including behavior interventions. In order to determine what services are needed to allow A.G. to make educational progress and avoid being held back, Plaintiff needs access to the

requested records. Defendants' denial of these records continues to frustrate Plaintiff's purpose as a P&A system by impeding Plaintiff's ability to provide meaningful advocacy and support to its client.

### iv.   M.B.

42.   On approximately February 27, 2015, Bertha Burrage contacted MPAS for assistance with educational programming for her daughter, M.B., a child with a disability covered by the DD Act who is enrolled in the District. Ms. Burrage reported a number of concerns including inadequate behavioral supports, failure to make educational progress, and the District's failure to conduct evaluations for special education eligibility despite Ms. Burrage having requested evaluations in writing multiple times.

43.   On approximately March 4, 2015, Ms. Burrage signed a retainer agreement, authorizing MPAS to represent her and M.B. in investigating the educational issues she had raised and to access M.B.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

44.   On March 11, 2015, MPAS, acting as the parent's representative, sent a letter to the District's Special Education Director, Director of Pupil Personnel, and the school Principal, requesting a copy of the student's education records. The documents requested included

16

evaluations and assessments, attendance records, individualized education plans, progress reports, records of services provided, personal curriculum plans, behavior plans, records of discipline referrals, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

45.     Defendants did not respond to Plaintiff's request in any way.

46.     On March 27, 2015, having received no response from the District, MPAS sent a follow up letter to Defendants reiterating the request for records. The original request letter and signed release of information were attached to this request.

47.     The March 27, 2015 letter also included the following paragraph to ensure that Defendants were aware of Plaintiff's access authority under the P&A Acts:

> . . .MPAS has our own rights to the educational records of students with disabilities. As the federally mandated, state designated Protection and Advocacy system for the state of Michigan, with federal statutory authorization outlined in 42 U.S.C. § 15043 *et seq.* and 42 U.S.C. §10801 *et seq.*, MPAS is entitled to access the records of any individual who is a client of our system, with authorization of the parent or guardian. We are entitled to "inspect and copy information and records, subject to a reasonable charge to offset duplicating costs." The timeframe for providing these records to MPAS, as outlined in the statute is three (3) business days.

48.     Having still not heard anything from the District, MPAS sent a third request for records to Defendants on April 2, 2015. The original and

follow-up request letters and signed release of information were enclosed with this request.

49.     On April 15, 2015, Defendants finally responded to Plaintiff's records requests by providing some of the requested documents. Defendants did not supply records of discipline referrals, behavior plans or progress reports, among other things.

50.     As of the date of this filing, Defendants have failed and refused to provide Plaintiff with all of the requested records as required by the P&A Acts.

51.     M.B. continues to face the threat of suspension or expulsion from school. Defendants have not provided necessary services to help teach her how to behave appropriately. If Defendants refuse to allow Plaintiff to review M.B.'s discipline referrals, behavior plans, and progress reports, Plaintiff will be unable to provide informed advocacy for the services that she needs to be successful and remain in school.

## B.     Resolved Requests for Records

52.     In the following cases, Defendants only provided the requested records when Plaintiff filed administrative complaints against them, pursuant to 20 U.S.C. § 1415, and months after they had originally been requested. In some cases, Defendants still failed to produce all requested

records. Despite the fact that Defendants did eventually respond to Plaintiff's requests in these cases, education for these students is an ongoing proposition. New records and issues continue to develop throughout the school year. Given Defendants' history and enduring practice of blatant disregard for Plaintiff's requests for records, there is no reason to believe that they will respond in accordance with the law if presented with future requests for these children.

   i.   **J.W.**

   53.   On October 14, 2014, Michelle Moomey contacted MPAS for assistance with educational programming for her son, J.W., a child with a disability covered by the DD Act who is enrolled in the District. She reported a number of concerns including frequent suspensions, a change in placement without an Individualized Education Program ("IEP") meeting, no manifestation determination review ("MDR") despite J.W. being removed from school for over 10 days, as required by 34 C.F.R. § 300.530, and ineffective behavioral supports.

   54.   On October 20, 2014, Ms. Moomey signed a retainer agreement authorizing MPAS to represent her and J.W. in investigating the educational issues she had raised and to access J.W.'s educational

records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

55. On October 30, 2014, MPAS, acting as the parent's representative, sent a letter to the District's Special Education Director, the School Principal and Superintendent requesting copies of the student's records. The documents requested included evaluations and assessments, progress reports, records of services provided, personal curriculum plan, current behavior plan, records of office referrals, records of manifestation determination reviews, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

56. Defendants did not respond to Plaintiff's request in any way.

57. Ms. Moomey continued to have concerns regarding J.W.'s educational programming, including the teacher's inability to locate the behavior plan, additional suspensions, seizures, threats to have J.W. arrested by the police liaison for inappropriate behavior and a request by the District to have J.W. taken to the hospital for a psychiatric evaluation before he could return to school.

58. On December 22, 2014, MPAS sent an additional request for records to the District's Special Education Director via email and fax.

59.   On January 13, 2015, MPAS received a call from the District's Office of Learning Services and Supports ("OSS") regarding the records. Petitioner's counsel explained that neither the parent nor MPAS had received any records from the District since the original request on October 30, 2014.

60.   On January 13, 2015, MPAS faxed a copy of the original request to the OSS.

61.   On January 14, 2015, the OSS faxed MPAS a copy of one outdated IEP. None of the other requested records were provided.

62.   After its attempts at solving this issue informally proved unsuccessful, Plaintiff, on behalf of Ms. Moomey and her minor son, J.W., filed a due process complaint with the Michigan Administrative Hearing System ("MAHS") on February 9, 2015.

63.   As a result of Plaintiff's due process complaint, the parties entered into a Settlement Agreement on March 12, 2015. As part of this Agreement, Defendants committed to provide a copy of J.W.'s education records in response to Plaintiff's request and thereafter did submit such records to Plaintiff.

64.   Defendants' denial of access to J.W.'s educational records frustrated Plaintiff's purpose as a P&A system by impeding Plaintiff's ability

21

to provide meaningful advocacy and support to its client. For approximately five months, or over half a school year, Plaintiff lacked sufficient information to determine whether Defendants had conducted all necessary evaluations of J.W., whether special education services and supports were being implemented, how often he was being removed from school or otherwise disciplined by the District, what his current level of functioning was at the time and whether or not he was making educational progress. While Plaintiff was attempting to obtain J.W.'s education records, he continued to struggle in school and was suspended or informally removed on multiple occasions.

     **ii.**    **B.F.**

65. On October 20, 2014, Tabitha Fenn contacted MPAS for assistance with educational programming for her daughter, B.F., a child with a disability covered by the DD Act who is enrolled in the District. She reported a number of concerns including formal and informal removals from school, change in placement, and inadequate behavioral supports.

66. On October 30, 2014, Ms. Fenn signed a retainer agreement, authorizing MPAS to represent her and B.F. in investigating the educational issues she had raised and to access B.F.'s educational records from the

District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

67.   On November 4, 2014, MPAS, acting as the parent's representative, sent a letter to Defendants requesting a copy of the student's education records. The documents requested included evaluations and assessments, attendance records, individualized education plans, progress reports, records of services provided, personal curriculum plans, behavior plans, records of discipline referrals, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

68.   Defendants did not provide any records in response to Plaintiff's request.

69.   On January 14, 2015, having received no response from the District, MPAS sent a follow up email to the District's Special Education Director reiterating the request for records. The original request letter and signed release of information were attached to this request.

70.   Having still not received any records from the District on January 30, 2015, MPAS sent a third request for records to the District's Special Education Director, Director of Pupil Personnel, and the school

Principal via email. The original request letter and signed release of information were again attached to this request.

71.    Defendants failed and refused to provide any records in response to Plaintiff's requests as required by the P&A Acts.

72.    After its attempts at solving this issue informally proved unsuccessful, Plaintiff, on behalf of Ms. Fenn and her minor daughter, B.F., filed a due process complaint against Defendants with the Michigan Administrative Hearing System ("MAHS") on February 23, 2015.

73.    As a result of Plaintiff's due process complaint, Defendants finally acquiesced and responded to the outstanding records requests by providing copies of the requested documents to Plaintiff on approximately March 20, 2015. Defendants did not, however, submit the requested attendance records.

74.    On March 26, 2015, Plaintiff voluntarily withdrew its due process complaint without prejudice.

75.    Ultimately, Defendants took approximately five months, or over half a school year, to provide B.F.'s records to Plaintiff. During that time, Ms. Fenn was at a loss for what to do to remedy the issues she was seeing and grew increasingly frustrated that Defendants were not allowing her to participate in planning for the education of her daughter. Without

appropriate supports and services in place, B.F. was placed on a half-day schedule, continued to struggle with behavior issues, and was frequently removed from school as a result. Although Plaintiff was willing to provide advocacy and support, Defendants impeded the ability to do so by refusing to supply the records necessary to allow Plaintiff to offer informed advice.

76.    Currently, Ms. Fenn is still struggling to obtain copies of B.F.'s attendance records from Defendants. The Michigan Department of Education ("MDE") has found that B.F. is entitled to compensatory education as a result of Defendants' failure to provide her with a free appropriate public education; however, without a detailed account of how much instruction she has missed, it will be difficult to determine the amount of compensatory education she should receive.

### iii.    M.G.

77.    On approximately November 19, 2014, Brandy Gladding contacted MPAS for assistance in securing an appropriate educational program for her daughter, M.G., a child with a disability covered by the DD Act who is enrolled in the District. She reported a number of concerns including the District's refusal to allow M.G. to attend school for approximately the first month of the 2014-15 school year and its failure to

evaluate her for special education eligibility despite Ms. Gladding having requested evaluations in writing over a month earlier.

78.   On approximately November 21, 2014, Ms. Gladding signed a retainer agreement, authorizing MPAS to represent her and M.G. in investigating the educational issues she had raised and to access M.G.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

79.   On November 24, 2014, MPAS, acting as the parent's representative, sent a letter to Defendants requesting a copy of the student's education records. The documents requested included evaluations and assessments, attendance records, individualized education plans, progress reports, records of services provided, personal curriculum plans, etc. A copy of the signed release of information was enclosed with this request.

80.   Defendants did not respond to Plaintiff's request in any way.

81.   On January 14, 2015, having received no response from the District, MPAS sent a follow up email to the District's Special Education Director reiterating the request for records. The original request letter and signed release of information were attached to this request.

82.    Having still not heard anything from the District, MPAS sent a third request for records to the District's Special Education Director, Director of Pupil Personnel, and the school Principal via email on January 30, 2015. The original request letter and signed release of information were again attached to this request.

83.    Defendants failed and refused to provide any records in response to Plaintiff's requests as required by the P&A Acts.

84.    After its attempts at solving this issue informally proved unsuccessful, Plaintiff, on behalf of Ms. Gladding and her minor daughter, M.G., filed a due process complaint against Defendants with the Michigan Administrative Hearing System ("MAHS") on March 4, 2015.

85.    As a result of Plaintiff's due process complaint, Defendants finally responded to the outstanding records requests by providing copies of the requested documents to Plaintiff on approximately March 20, 2015.

86.    On April 1, 2015, Plaintiff voluntarily withdrew its due process complaint without prejudice.

87.    Defendants' denial of access to M.G.'s educational records frustrated Plaintiff's purpose as a P&A system by impeding Plaintiff's ability to provide meaningful advocacy and support to its client. For approximately five months, or over half a school year, Plaintiff lacked sufficient information

27

to determine whether Defendants had conducted all necessary evaluations, whether special education services and supports were being provided and whether M.G. was making educational progress. During that time, Ms. Gladding requested Plaintiff's assistance on several issues, including requesting and receiving evaluations, securing eligibility for special education, and ensuring that appropriate services be put in place to help M.G. succeed in school. Without receiving the requested educational records, Plaintiff could not provide specific advice or precise directions on how to move forward. As a result, M.G. did not receive special education services for several months and continued to fall behind her peers academically.

      **iv.   D.K.**

      88.   On September 22, 2014, Racheal Kirksey contacted MPAS for assistance with educational programming for her son, D.K., a child with a disability covered by the DD Act who is enrolled in the District. Ms. Kirksey reported a number of concerns, including removals from school, change in placement, inadequate behavior supports, transportation to and from school, and the District's requirement that she or D.K.'s grandmother attend school and sit in class with him.

      89.   Ms. Kirksey is legally blind.

90. On approximately October 7, 2014, Ms. Kirksey signed a retainer agreement, authorizing MPAS to represent her and D.K. in investigating the educational issues she had raised and to access D.K.'s educational records from the District. She also signed a release of information, permitting the District to communicate with MPAS and disclose records.

91. On October 15, 2014, MPAS, acting as the parent's representative, sent a letter to the District's Special Education Director, Superintendent, and the school Principal requesting copies of D.K.'s records. The documents requested included evaluations and assessments, IEP progress reports, records of services provided, personal curriculum plan, current behavior plan, records of office referrals, records of manifestation determination reviews, restraint and seclusion records, etc. A copy of the signed release of information was enclosed with this request.

92. Having received no response from the District, MPAS sent a follow up records request to Defendants on October 30, 2014.

93. Defendants did not respond to Plaintiff's requests in any way.

94. On December 22, 2014, MPAS sent a third request for records to the District's Special Education Director via U.S. Mail and fax.

95. On January 14, 2015, the OSS faxed MPAS a copy of the student's IEP dated June 12, 2014. None of the other requested records were provided.

96. On January 14, 2015, MPAS left a voicemail message for OSS regarding the incomplete records.

97. On February 6, 2015, the District held an IEP meeting at which time D.K. was found ineligible for special education. Ms. Kirksey and MPAS did not have any of D.K.'s records and, therefore, could not adequately prepare for the meeting.

98. After its attempts at solving this issue informally proved unsuccessful, Plaintiff, on behalf of Ms. Kirksey and her minor son, D.K., filed a due process complaint against Defendants on February 24, 2015.

99. As a result of Plaintiff's due process complaint, Defendants finally acquiesced and responded to the outstanding records requests by providing copies of the requested documents to Plaintiff on approximately March 20, 2015.

100. On April 7, 2015 Plaintiff voluntarily withdrew its due process complaint without prejudice.

101. For approximately five months, or over half a school year, Plaintiff was unable to offer meaningful advocacy and support to D.K.

30

because Defendants refused to provide access to his records. On one occasion during this period, Ms. Kirksey asked Plaintiff for guidance for a pending IEP meeting; however without information contained in D.K.'s records, Plaintiff could not provide specific advice. When the IEP meeting was held, Defendants revoked D.K.'s eligibility for special education. Around the same time, D.K. was removed from school and not allowed to attend again until months later.

## V. CAUSES OF ACTION - § 1983

102. Plaintiff incorporates and re-alleges paragraphs 1 through 101, as if fully set forth herein.

103. The P&A Acts provide Plaintiff with the right and authority to access and copy all information and records of any individual with a developmental disability or mental illness who is a client of the system if such individual or legal representative has authorized the system to have such access. This authority extends to reports prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities and includes records prepared or received in the course of providing education. 42 U.S.C. §§ 10805(a)(4)(A), 15043(a)(2)(I)(i) and 15043(c)(1); 42 C.F.R. 51.41; 45 C.F.R. 1386.22.

31

104. Plaintiff also has the right under the DD Act to access the requested records "not later than 3 business days after the system makes a written request for the records involved." 42 U.S.C. § 15043(a)(2)(J).

105. Defendants' acts and omissions set forth above have violated 42 U.S.C. § 1983 by depriving Plaintiff of rights under the P&A Acts, including, but not limited to, the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001 *et seq.*; and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e.

106. Plaintiff is entitled to recover its attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare that Defendants' failure to provide Plaintiff with copies of the requested education records has violated Plaintiff's rights under 42 U.S.C. § 10805(a)(1)(B) and (a)(4)(A) and 42 U.S.C. § 15043(a)(2)(A) and (a)(2)(I);

B.     Declare that Defendants have an obligation to assure that the access rights granted to Plaintiff by the P&A Acts are fully and uniformly implemented;

C.     Grant Plaintiff a preliminary injunction requiring Defendants to immediately provide Plaintiff with copies of all previously requested education records that have not yet been provided and to respond to any records requests made during the pendency of this litigation within three days by providing copies of the requested records, as required by the P&A Acts;

D.     Permanently enjoin Defendants from violating Plaintiff's rights under 42 U.S.C. § 1983 and the P&A Acts by requiring Defendants to provide Plaintiff with copies of all requested records within three days of a request being made;

E.     Waive the security requirement of Rule 65(c);

F.     Order Defendants to pay Plaintiff's reasonable attorneys' fees and costs; and

33

G.    Order any other and further relief, both legal and equitable, to which Plaintiff may be entitled.

Respectfully submitted,

Dated:  July 10, 2015

Brad Dembs
Michigan Protection and Advocacy
Service, Inc.
4095 Legacy Parkway, Ste. 500
Lansing, MI 48911
(517) 487-1755
bdembs@mpas.org
P76692