UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

    Plaintiff,

v.

FLINT COMMUNITY SCHOOLS and
LARRY WATKINS, JR., in his official
capacity as Interim Superintendent of
Flint Community Schools,

    Defendants.

Case No. 2:15-cv-12470

Hon. David M. Lawson

---

MICHIGAN PROTECTION AND ADVOCACY
SERVICE, INC.
Brad Dembs (P76692)
Crystal Grant (P71488)
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755

---

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Michigan Protection and Advocacy Service, Inc. ("Plaintiff") moves this Court to enter a Preliminary Injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. In support of this Motion, Plaintiff states as follows:

1. Plaintiff refers this court to, and incorporates by reference, Plaintiff's Complaint and Memorandum in Support of Plaintiff's Motion for Preliminary Injunction.

2. As shown by Plaintiff's Complaint and Memorandum, immediate and irreparable harm will result to Plaintiff and children with disabilities unless the relief prayed for is granted.

3. It is likely that Plaintiff will succeed on the merits.

4. No harm to Defendants will result if such relief is granted.

5. The injunction requested will serve the public interest.

WHEREFORE, Plaintiff requests that this Court enter a preliminary injunction ordering Defendants to do the following:

A. Provide Plaintiff with the records requested in each of Plaintiff's outstanding records request letters;

B. Respond to any records requests made during the pendency of this litigation by providing copies of all requested records within three days, as required by the P&A Acts; and

C. Cease and desist from violating Plaintiff's rights and the rights of individuals with disabilities under 42 U.S.C. §1983 pursuant to the P&A Acts, specifically the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities

Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15001 *et seq.*; the Protection and Advocacy of Individual Rights Program, 29 U.S.C. §§ 794e *et seq.*

                            Respectfully submitted,

Dated: July 13, 2015         s/Brad Dembs
                                      Michigan Protection and Advocacy Service, Inc.
                                      4095 Legacy Parkway, Ste. 500
                                      Lansing, MI 48911
                                      (517) 487-1755
                                      bdembs@mpas.org
                                      P76692

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

    Plaintiff,

v.

FLINT COMMUNITY SCHOOLS and
LARRY WATKINS, JR., in his official
capacity as Interim Superintendent of
Flint Community Schools,

    Defendants.

Case No. 2:15-cv-12470

Hon. David M. Lawson

---

MICHIGAN PROTECTION AND ADVOCACY
SERVICE, INC.
Brad Dembs (P76692)
Crystal Grant (P71488)
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

### I. SUMMARY OF ARGUMENT

Plaintiff, Michigan Protection and Advocacy Service, Inc. ("MPAS") brings this action pursuant to 42 U.S.C. § 1983 to enforce its rights guaranteed by federal law. *Advocacy Ctr v. Stalder*, 128 F. Supp. 2d 358

4

(M.D. La. 1999). MPAS is the protection and advocacy system for individuals with disabilities in the state of Michigan. The State receives funding from the federal government and in return must designate a protection and advocacy system under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001 et seq.; and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. § 794e. (hereafter collectively referred to as the "P&A Acts").

MPAS, as a protection and advocacy program, has the authority to pursue legal, administrative, and other remedies to ensure the protection of individuals with disabilities who are clients of MPAS. In order to ensure that protection and advocacy programs such as MPAS can carry out this authority, the P&A Acts provide them with broad access rights to records kept by Defendants for the purpose of providing protection and advocacy services to their clients. See e.g. 42 U.S.C. §§ 10805(a)(4)(A), 15043(a)(2)(I)(i); 42 C.F.R. § 51.41(b)(1) (PAIMI regulations); 45 C.F.R. § 1386.22(a)(1) (DD regulations).

MPAS has been contacted by numerous families of children with disabilities who have concerns that Defendants are failing to provide a free

and appropriate public education and other rights and protections afforded by federal and state law to their children with disabilities who are enrolled in Defendants' schools. Upon receiving notice of these alleged failures, as well as authorization from the parents or legal guardians of these children with disabilities, Plaintiff sent letters to Defendants requesting copies of educational records[1]. Defendants have repeatedly blocked Plaintiff's ability to carry out its responsibilities to protect and advocate on behalf of its clients by refusing to respond to Plaintiff's records requests or by responding after such a lengthy delay that irreparable harm has been done.

The issue in the instant case concerns Plaintiff's right and authority under the P&A Acts to utilize effective measures, including access to records, in order to protect and advocate on behalf of its clients. Because Defendants are interfering with these rights and authority, Plaintiff is entitled to an injunction in order to fulfill its mandate under the P&A Acts. Defendants' refusal to comply has created a "chilling effect" on Plaintiff's ability to promptly and effectively provide protection and advocacy to students with disabilities, thereby causing irreparable harm, which outweighs any harm to the Defendants in providing effective access and releasing copies of the requested records. The P&A Acts are very explicit in

---

[1] *See* Exhibit A - Plaintiff's 18 Records Request Letters.

granting Plaintiff the access they seek, virtually assuring that Plaintiff will ultimately succeed on the merits of its claim. Providing Plaintiff with this access would cause no harm to others and would enable Plaintiff to continue its responsibility to advocate on behalf of individuals with disabilities.

As a result of the ongoing nature of this issue, and the failure to resolve it within a reasonable time, Plaintiff requests that this court order Defendants, in accordance with the P&A Acts, to immediately provide Plaintiff access to the requested records.

## II. STATEMENT OF FACTS

The evidence will show that over the course of approximately the past year, Plaintiff has made multiple attempts to obtain education records for numerous children with disabilities who are enrolled as students at Defendants' schools. Although Plaintiff has submitted multiple requests on behalf of its clients, Defendants have either wholly ignored Plaintiff's requests or delayed in providing records for extended periods of time, often exceeding several months. Even when records were provided after lengthy delays, they were minimal and incomplete.

Plaintiff has attempted various approaches to negotiate with Defendants in the past to eliminate their illegal and inconsistent policy and

practice of refusing to provide records. In addition to its multiple records request letters, Plaintiff also sent Defendants a letter expressing their concerns and offering to meet in order to work cooperatively to resolve this issue. Consistent with their lack of response to Plaintiff's records requests, Defendants never acknowledged this letter in any way.

Plaintiff has also filed multiple due process complaints against Defendants, pursuant to 20 U.S.C. § 1415, for the purpose of securing the requested records through administrative remedies. 42 U.S.C. § 10807. Although Defendants responded to these complaints by providing Plaintiff with many of the documents sought, they did not provide all of the necessary records and have continued to deny access to requested records by refusing to respond to Plaintiff's requests on behalf of other students with disabilities since that time.

As a result of Defendants' failure to provide Plaintiff with access to the records that were requested, Plaintiff has been unable to fulfill its mandate under the P&A Acts. Without access to records, no specific determinations can be made, and therefore, no effective protection and advocacy assistance can be provided. In short, Defendants are thwarting Plaintiff's ability to fulfill its responsibilities under federal law, and children

with disabilities and their families are being denied meaningful access to Plaintiff's services.

See Plaintiff's Complaint, parents' Affidavits (attached as Exhibits B-I), and Affidavit of Judith L. Lindstrom (attached as Exhibit J) for more detailed information on Plaintiff's efforts to obtain education records from Defendants and how Defendants' inappropriate response has led to negative effects for the students with disabilities that Plaintiff represents.

### III. ARGUMENT

**A.   PLAINTIFF HAS THE AUTHORITY TO OBTAIN ACCESS TO RECORDS PURSUANT TO THE P&A ACTS.**

There are three Federal statutes that require each state to maintain a P&A system:

1. The Developmental Disabilities Assistance and Bill of Rights Act, Public Law 101-496, Part C, as amended ("DD Act");

2. The Protection and Advocacy for Individuals with Mental Illness Act, Public Law 99-319, as amended ("PAIMI Act"); and

3. The Protection and Advocacy for Individual Rights Act, Public Law 93-112, as amended ("PAIR Act").

Plaintiff is designated as Michigan's "eligible [protection and advocacy] system," 42 U.S.C. § 10802(2), and is part of a nationwide network of disability rights agencies which are mandated under the P&A Acts to provide legal representation and advocacy services to persons with

disabilities who are clients of the system. *See*, e.g. 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A).

The first of these statutes, the DD Act, was enacted in 1975 to protect the human and civil rights of persons with developmental disabilities. 42 U.S.C. § 6000 *et seq*, as amended 42 U.S.C. § 15001 *et seq.* The P&A system was established, as an integral component of this Act, to ensure that these protections became a reality.

The second of these statutes, the PAIMI Act, was passed in 1986 on behalf of persons with mental illness. 42 U.S.C. § 10801 *et seq.*[2] The PAIMI Act, which is modeled after the DD Act, provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act.

The last of these statutes, the PAIR Act, was passed in 1992 as an amendment to the Rehabilitation Act on behalf of a broad spectrum of person with disabilities. Under the PAIR Act, P&As are authorized to use the same mechanisms as provided under the DD Act to serve persons with disabilities who are not eligible under either the DD or PAIMI Act. 29 U.S.C. § 794e.

---

[2] The PAIMI Act was amended by the Children's Health Act of 2000, Pub.L. No. 106–310, 114 Stat. 1101.

Courts have consistently held that the P&A Acts require P&A agencies to be allowed to operate effectively, and with broad discretion and independence in exercising their access authority. *See Michigan Protection & Advocacy Service, Inc. v Miller*, 849 F. Supp. 1202 (W.D. Mich. 1994); *Mississippi Protection & Advocacy System, Inc. v Cotten*, 929 F.2d 1054 (5th Cir. 1991); *Alabama Disabilities Advocacy Program v Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358 (M.D. La. 1999); *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M. 1990). The court in *Cotten* expounded upon this obligation as follows:

> The Act not only describes the range of services to be provided by the protection and advocacy systems, it also states that the systems must have the authority to perform these services. The state cannot satisfy the requirements of the [DD Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority.

929 F. 2d at 1029. As the court in *Tarwater* noted, any other reading "would attribute to Congress an intent to pass an ineffective law." 824 F. Supp. at 429. It was also Congress' intent that the DD and PAIMI Acts be applied in a like manner. See, e.g., S.Rep. No. 109, 99th Cong., 1st Sess. 3 (1986); S.Rep. 113, 100th Cong., 1st Sess. 24 (1987).

11

Under the P&A Acts, Plaintiff has broad authority to access the records that it is seeking in the present case. As the statutes and their implementing regulations provide, P&A systems shall have access to <u>all</u> records of any individual with a developmental disability or mental illness who is a client of the system if such individual or legal guardian has authorized the system to have such access. 42 U.S.C. §§ 10805(a)(4)(A), 15043(a)(2)(I)(i); 42 C.F.R. § 51.41(b)(1); 45 C.F.R. § 1386.22(a)(1). Plaintiff is entitled to inspect and copy information and records, subject to a reasonable charge to offset duplicating costs, and to have such access within three business days of making a written request for records. 42 C.F.R. § 51.41(e); 45 C.F.R. § 1386.22(d); 42 U.S.C. § 15043(a)(2)(I),(J).

Individual records to which P&A systems must have access can be written or in another medium, draft or final, including handwritten notes, electronic files, photographs, video or audio tape records and shall include, but <u>shall not be limited to</u> information and individual records obtained in the course of providing intake, assessment, evaluation, <u>education</u>, training, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment, including any location at which services, supports, or other assistance is provided to individuals with

developmental disabilities. 42 U.S.C. §§ 10806(b)(3)(A), 15043(c)(1); 42 C.F.R. § 51.41; 45 C.F.R. § 1386.22(b)(1). "Care and treatment" expressly includes special education services designed to address mental illness or emotional impairment. 42 C.F.R. § 51.2.

Under the P&A Acts, the term "facilities" may include, <u>but need not be limited to</u>, hospitals, nursing homes, community facilities (such as group homes, board and care homes, individual residences and apartments), day programs, juvenile detention centers, homeless shelters, and jails and prisons. 42 U.S.C. § 10802(3); 45 C.F.R. § 1386.19.[3] The PAIMI Act's implementing regulations define facilities more narrowly to only include "any public or private residential setting that provides overnight care accompanied by treatment services." 42 C.F.R. § 51.2.

Nevertheless, courts have held that non-residential facilities, including schools, are not precluded from being considered facilities under the P&A Acts. See *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006) (Sotomayor, J.) (school constituted a facility to which P&A must have reasonable access under PAIMI Act); *Disability Law Ctr. of Alaska, Inc. v.*

---

[3] See *Michigan Prot. & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. at 1207, holding that "[t]he simple fact that [Defendant's] facilities are primarily concerned with education and rehabilitation does not prevent them from falling under the auspices of [PAIMI]."

13

*Anchorage Sch. Dist.*, 581 F.3d 936, 939-40 (9th Cir. 2009) (P&A obtained access to intensive special needs education class at school under PAIMI Act and DD Act); *Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 726 (7th Cir. 2006) (school providing special education program "easily meets the definition of a facility" providing care and treatment under the DD Act).

In *Hartford Board of Education*, the defendant school district argued against P&A access to one of its public schools on the basis of the PAIMI implementing regulations. The court rejected this argument, reasoning that after the implementing regulations had gone into effect, Congress amended PAIMI through the Children's Health Act of 2000 to extend its protection from just individuals who were inpatients or residents of a care or treatment facility to also include individuals with mental illness who live in community settings, including their own homes. 42 U.S.C. § 10802(4)(B)(ii). The court found that "reading the facility-access provision as limited to residential facilities is contrary to Congress's clearly expressed intent to provide protection and advocacy services for individuals with mental illness living in their own homes" and therefore concluded that the regulatory interpretation of "facilities" promulgated by 42 C.F.R. § 51.2 is no longer consistent with

PAIMI after the 2000 amendments." 464 F.3d at 240. The court held that the P&A was entitled to appropriate access to the public school.

Defendants' practice of ignoring Plaintiff's requests for records, or failing to respond for several months in some cases, violates the P&A Acts and denies Plaintiff access to the information it needs in order to effectively protect and advocate on behalf of students with disabilities. See *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M. 1990) (P&A challenged a highly restrictive policy regarding access to records imposed by a State mental health facility. Court held that limitations on access violated P&A's constitutional and statutory rights of access and thwarted the purposes of the PAIMI Act). As the court in *Robbins* explained:

> Access to patient records is necessary for P & A to serve its clients, evaluate its clients' concerns, and determine whether a client has a legal claim...Timely access to records is essential for effective communication between P & A and its clients just as it is for other advocates and attorneys.

*Id.* at 1488. Delays of up to one month in processing requests for the release of records could preclude the P&A "from acting within prescribed deadlines or may cause a violation to go unaddressed until it is too late to remedy." *Id.* In the present case, the students for whom Plaintiff is seeking records all have disability-related academic or behavior issues that are causing them to fall behind their peers. The more time they attend school

without appropriate services in place, the further behind they are at risk of becoming. There are also timelines imposed by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401 *et seq.*, and other applicable laws that could expire before legal efforts could be undertaken if records are not provided in a timely manner.

Indeed, courts have not hesitated in the past to issue injunctive relief on behalf of P&A systems when their ability to access records was being hampered or denied. In *Robbins*, the court ordered the facility to "provide immediate access to all records, including incident reports, medical referrals, seclusion and restraint logs, and internal investigation reports which may not be in residents' charts with informed consent provided by the resident or guardian or as provided [in the access provisions of the PAIMI Act]." 739 F. Supp. at 1489.

Defendants may cite the Federal Educational Rights and Privacy Act ("FERPA") and the Individuals with Disabilities Education Act ("IDEA") to argue that the restrictions they are imposing are based on concerns over confidentiality. These concerns, as important as they are, are unwarranted. As the court in *Miller* reasoned, "given the unequivocal statutory mandate afforded to protection and advocacy systems to access records in specific situations and the statutory responsibility of such organizations to keep

such records confidential, FERPA and IDEA did not prevent educational institutions and agencies from providing such systems with records." *State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 663 (D. Conn. 2005), citing *Michigan Prot. & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 1202 (W.D. Mich. 1994).

The law is abundantly clear that Plaintiff has the authority to access the education records of students with disabilities who are clients of the system. Defendants' actions have barred Plaintiff from fulfilling its federal mandate and have prevented students with disabilities from accessing Plaintiff's services.

**B. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION TO FULFILL ITS MANDATE UNDER THE P&A ACTS.**

In granting preliminary injunctive relief, courts consider and balance four factors to determine whether such a motion should be granted: (1) whether the movant has a strong likelihood of success on the merits of the claim; (2) whether the movant would suffer irreparable harm without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *City of Pontiac Retired Employees Ass'n v.*

*Schimmel*, 751 F.3d 427 (6th Cir. 2014). Application of this analysis shows that Plaintiff is entitled to preliminary injunctive relief.

As argued above, the P&A Acts grant Plaintiff broad access rights for the purpose of providing protection and advocacy services to people with disabilities. This includes the right to access and obtain copies of all records of any individual who is a client of the system, with authorization from that client or legal guardian. As this right to access the records being sought in the present case is explicitly granted to Plaintiff by the P&A Acts, Plaintiff has a strong likelihood of success on the merits of its claim.

Plaintiff will be irreparably harmed if the preliminary injunction is not issued. Plaintiff is unable to perform its statutory functions without the access rights at issue in this case. Likewise, the imposition of undue limitations on P&A access presents an immediate and realistic threat of harm to the students with disabilities that Plaintiff represents. These students and their parents remain unaware of their rights, how those rights are being violated by Defendants, and what they can do to ensure that the supports and services they are entitled to are provided. Absent such information, these students with disabilities will continue to struggle in the school setting and will begin the next school year without the counsel of a fully informed advocate or attorney to assist them.

There is no risk of substantial harm to Defendants in granting the preliminary injunction since Defendants often provide access to records consistent with the P&A Acts to parents, transfer school districts, and other parties. In addition, the P&A Acts account for any financial harm that could be incurred by Defendants by providing that Plaintiff's right to inspect and copy records is "subject to a reasonable charge to offset duplicating costs." 42 C.F.R. § 51.41(e); 45 C.F.R. § 1386.22(d).

Finally, the P&A Acts are evidence of a strong public interest in protecting the legal rights of individuals with disabilities. Issuance of a preliminary injunction in this case would only advance the public interest that is the very basis for the P&A Acts by allowing Plaintiff to fulfill its protection and advocacy duties under the law.

WHEREFORE, Plaintiff requests that this Court enter a preliminary injunction as prayed for in its Complaint.

Respectfully submitted,

Dated: July 13, 2015

s/Brad Dembs
Michigan Protection and Advocacy Service, Inc.
4095 Legacy Parkway, Ste. 500
Lansing, MI 48911
(517) 487-1755
bdembs@mpas.org
P76692

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2015, I electronically filed the foregoing Motion for Preliminary Injunction and Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction with the Clerk of the Court using the ECF system. In addition, I hereby certify that a process server will serve the papers to the following non-ECF participants:

>Isaiah Oliver, School Board President
>Flint Community Schools
>421 Garland Street, Apt. 206
>Flint, MI 48503
>
>Larry Watkins, Jr., Interim Superintendent
>Flint Community Schools
>923 East Kearsley Street
>Flint, MI 48503

>s/Brad Dembs
>Michigan Protection and Advocacy Service, Inc.
>4095 Legacy Parkway, Ste. 500
>Lansing, MI 48911
>(517) 487-1755
>bdembs@mpas.org
>P76692